E-filing

1  Nathan Dooley (SBN 224331)
   Adam C. Bonin (*Pro hac vice admission pending*)
2  COZEN O'CONNOR
   777 South Figueroa Street
3  Suite 2850
   Los Angeles, California 90017
4  Telephone: 213.892.7900
   Toll Free Phone: 800.563.1027
5  Facsimile: 213.892.7999

6  Attorneys for Plaintiffs
   Kos Media and Markos Moulitsas Zúniga

7

FILED
JUN 30 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

8         UNITED STATES DISTRICT COURT
9         NORTHERN DISTRICT OF CALIFORNIA
10        OAKLAND DIVISION

11  KOS MEDIA, LLC and              )  Case No. C10-02894 MEJ
    MARKOS MOULITSAS ZÚNIGA,        )
12                                  )
13         PLAINTIFFS,               )  COMPLAINT FOR
                                    )
14                                  )  1) BREACH OF CONTRACT;
                                    )  2) UNFAIR BUSINESS
15  VS.                             )     PRACTICES IN VIOLATION
                                    )     OF CAL. BUS. & PROF. CODE
16                                  )     §§ 17200 et seq.;
                                    )  3) BREACH OF IMPLIED
17  RESEARCH 2000 AND DELAIR D ALI, )     WARRANTY
                                    )  4) INTENTIONAL
                                    )     MISREPRESENTATION;
    DEFENDANTS.                     )  5) NEGLIGENT
                                    )     MISREPRESENTATION;
                                    )  6) CONSTRUCTIVE FRAUD;
                                    )  7) CONVERSION
                                    )
                                    )  **JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Kos Media LLC and Markos Moulitsas Zúniga ("Plaintiffs"), by their undersigned counsel, and in support of their complaint against Defendants Research 2000 ("Research 2000"), and Delair D. Ali (collectively "Defendants") hereby allege as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked under 28 U.S.C. §1332. The controversy between Plaintiffs and Defendants is between citizens of different states. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars ($75,000).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3. An actual controversy exists between the parties, involving rights and liabilities under an agreement between Kos Media, LLC and Research 2000, and this controversy may be resolved by a judgment in this action without other suit.

4. An actual controversy exists among the parties to this proceeding, and litigation with respect thereto is imminent and inevitable.

## INTRADISTRICT ASSIGNMENT

5. Pursuant to Civil Local Rule 3-5(b), assignment to the Oakland Division of the U.S. District Court for the Northern District of California is appropriate because a substantial part of the events and damages giving rise to this action occurred in the City of Berkeley and County of Alameda, which is most proximate to the Oakland Division.

## THE PARTIES

6. Kos Media LLC, a Delaware limited liability company, is based in Berkeley, California.

7. Markos Moulitsas Zúniga ("Moulitsas"), a resident of Berkeley, California, is the founder, publisher and sole owner of Kos Media LLC.

8. Research 2000 is a polling firm based in Olney, Maryland.

9. Delair D. Ali ("Ali") is, upon information and belief, the owner and CEO of Research 2000, and is an individual residing in Maryland.

# FACTS

## Nature of the Relationship Between the Parties

10. Kos Media LLC owns and operates DailyKos (http://www.dailykos.com), the largest progressive community blog in the United States.

11. Founded in May 26, 2002, DailyKos is the premier online political community with 2.5 million unique visitors per month and 250,000 registered users. It is at once a news organization, community, and activist hub through which hundreds of thousands of regular Americans continue to shape a political world once the exclusive domain of the rich, connected, and powerful. Among luminaries posting diaries on the site are President Jimmy Carter, Senator Barack Obama, Senate Majority Leader Harry Reid, Speaker of the House Nancy Pelosi, and dozens of other senators, congressmen, and governors.

12. DailyKos has nine paid staffers.

13. As part of its role as a news organization, Plaintiffs commissioned its first paid political poll from Research 2000 in September 2007.

14. During 2007 and 2008, Plaintiffs requested and Research 2000 committed to perform paid polls on an as-needed basis for the website.

15. Late in 2008, Plaintiffs started commissioning polls in bulk from Research 2000 for use on DailyKos. For a set fee, the parties contracted for Research 2000 to perform a daily tracking poll of the 2008 presidential election, as well as number of other polls in specific states.

16. Shortly after the 2008 election, Plaintiffs entered into negotiations with Research 2000 for a long term, multi-poll deal that included a weekly "State of the Nation" poll and state/race specific polls as requested by DailyKos through Kos Media. The agreement was reached orally, requiring Kos Media to make lump-sum payments twice in 2009 as well as an additional large payment in December 2008 at the initiation of the agreement.

17. The parties specifically agreed that the weekly "State of the Nation" poll was to include 2,400 respondents. This remained in effect until March 4, 2010, when the parties agreed to poll 1,200 respondents weekly.

18. The parties specifically agreed that polling as to specific electoral contests was to include 600 respondents, with primary oversamples of 400 respondents.

19. At the time, these polls were often praised for their "transparency," since they included detailed cross-tabs on sub-populations and a clear description of the random dialing technique Research 2000 employed.

20. By the request of Ali, claiming it would provide "immense" help for cash flow reasons, Plaintiffs agreed to advance the second lump-sum payment to May 2009 in exchange for additional polls to be performed free of charge. More specifically, in 2009 the agreement between Plaintiffs and Defendants provided that Defendants would supply 150 polls to DailyKos. Plaintiffs offered to add an additional 59 polls to the 2009 agreement if Plaintiffs agreed to make a substantial advance payment. Kos Media accepted Defendants' offer and advanced Defendants the money in exchange for the promised 59 polls.

21. In December 2009, Kos Media and Research 2000 negotiated a new agreement for 2010, a federal election year, increasing the cost per poll performed and continuing the weekly "State of the Nation" poll.

### Nature of the Dispute

22. On June 6, 2010, noted statistician and political analyst Nate Silver of FiveThirtyEight.com and the New York Times published a comprehensive article titled "Pollster Ratings v4.0: Results," ranking all political polling firms based on detailed statistical analysis of the accuracy of their polling. Of the sixty-four polling firms which had conducted ten or more polls which Silver ranked, Research 2000 was among the five worst in terms of accuracy.
http://www.fivethirtyeight.com/2010/06/pollster-ratings-v40-results.html

23. In an effort to seek a more accurate and credible pollster for the website, Kos Media terminated its relationship with Research 2000 on June 9, 2010.

24. As part of his correspondence to Ali terminating the relationship, Moulitsas noted: "Currently, you owe us some polls. We won't pursue any refund. We'll just call it even." Ali responded by writing, "Best of luck to you" and attached a lengthy self-defense of his polling methods, lashing out at the NYT's Silver as "nothing more than a fringe blogger." At neither that point nor at subsequent point did Ali communicate to Moulitsas any different understanding as to the parties' financial obligations to each other.

25. On June 14, 2010, Moulitsas was approached by a number of independent statistical analysts with regards to Research 2000's polling for DailyKos. Their analysis of the published data revealed a number of statistical anomalies regarding the results which revealed that Research 2000 had almost certainly falsified the results in whole or in part.

26. The anomalies detected included that among 778 weekly polling questions regarding a politician's "favorables" allegedly performed by Research 2000, the purported male and female sub-samples either came out both with even numbers or both with odd numbers 776 of 778 times; the "unfavorables" were both even or both odd 777 of 778 times. Since the odds of getting a match each time randomly is 50%, the odds of obtaining 776/778 matches is the odds of obtaining 776 heads on 778 tosses of a fair coin, an event which should occur one in every $10^{228}$ (ten followed by 228 zeroes) times. The likelihood of the unfavorable results having occurred by chance is one in every $10^{231}$. The only logical conclusion is that the numbers for these groups were not generated by independent polling but by falsification of data in whole or in part.

27. Similarly, the week-to-week statistical variation claimed by Research 2000 could not have occurred randomly; the odds of its results occurring by chance are less than one in $10^{16}$, i.e. one in ten million-billion. The only logical conclusion is

that their numbers were not generated by independent polling but by falsification of data in whole or in part.

28. Additionally, the week-to-week variance in favorability for politicians polled demonstrated a distribution far outside the expected ranges and far outside the ranges demonstrated by other polling firms, strongly indicating that Research 2000's numbers were not generated by independent polling but by falsification of data in whole or in part.

29. On Monday, June 14, 2010, Moulitsas approached Ali with his concerns. In response, Ali promised via email on that date to provide Moulitsas with the raw data from which the polling results were constructed to verify their validity.

30. On Wednesday, June 16, 2010, Ali emailed Moulitsas with regards to the raw data, stating that "you can expect it either Friday, if not, no later than Monday."

31. On Monday, June 21, Ali again stalled, emailing Moulitsas to state: "I am at a Kinkos computer because we cannot read any mail from our PC,s [sic] and cannot attached [sic] any documents or files to send. Reading email from my cell. Just got to a Kinkos. Computer Geeks cannot do anything until tomorrow morning."

32. As of this date, Wednesday June 30, 2010, despite numerous requests from Moulitsas and purported commitments from Ali to provide the raw data which could verify Research 2000's polling's validity, Ali has refused to provide this data.

## FIRST CAUSE OF ACTION
### Breach of Contract

33. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 32, as though fully set forth at length herein.

34. Kos Media and Research 2000, through Moulitsas and Ali, entered into a series of oral agreements through which Kos Media would pay Research 2000 for

1  political polling performed based on the standards of the profession, including specific
2  requirements for the number of individuals surveyed.

3      35. Defendants, each of them, breached the agreement between the parties
4  by failing to perform the polls which they were contracted to provide, instead
5  falsifying the data provided.

6      36. Plaintiffs performed all conditions, covenants, and promises required to
7  be performed in accordance with the terms and conditions of the agreement.

8      37. Plaintiffs were damaged by Defendants' breach, and have suffered
9  damages in excess of $100,000.

## SECOND CAUSE OF ACTION

**Unfair Business Practices Pursuant to Cal. Bus. and Prof. Code §§ 17200 et seq.**

    38. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 37, as though fully set forth at length herein.

    39. Under the agreement with Kos Media, Defendants were required to supply accurate polling data for specific electoral contests as well as, among other things, a weekly "State of the Nation" poll to be based upon a specific number of respondents as described heretofore in greater detail. Defendants breached their obligations under this agreement and perpetuated a fraud on Plaintiffs as well as the general public at large by providing false polling data in whole or in part.

    40. Defendants' caused injury to Plaintiffs in the form of reputational harm and damages. Defendants' conduct also caused considerable harm to the general public. Defendants were aware that their actions would cause harm to Plaintiffs and the general public by the general dissemination of falsified polling data during an election year. Unless enjoined by this Court, Defendants' fraudulent business practice of providing false polling data will continue to cause damage to plaintiffs as well as the general public. Plaintiffs are therefore entitled to injunctive relief as well as restitution from Defendants.

41.   Upon information and belief, Plaintiffs allege that Defendants' actions leading up to and including the occurrences set forth in the Complaint, constitute and constituted unfair competition and unfair and illegal business practices forbidden by California law, including but not limited to California Business and Professions Code §17200 *et seq.*, in that those actions made it likely that plaintiffs would be harmed and deceived, and in fact plaintiffs were harmed and deceived, in their dealings with Defendants. In particular, Defendants' fraudulent polling practices, all of which were part of and in furtherance of Defendants' business practices, resulted in the deception of both Plaintiffs and their readers, and the same constituted and constitute unfair business practices as aforesaid.

42.   Unless enjoined by this Court, Defendants' fraudulent business practice of providing false polling data will continue to cause damage to plaintiffs as well as the general public. Plaintiffs are entitled to injunctive relief and restitution from Defendants.

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty

43.   Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 42, as though fully set forth at length herein.

44.   At all relevant times, Defendants owed Plaintiffs an implied warranty of workmanlike performance, including a duty to provide satisfactory polling results suitable for broad public dissemination. This warranty applied to all aspects of the polling to be performed for Kos Media.

45.   At all relevant times, Defendants knew DailyKos intended publish the poll results supplied to it by Defendants, and Defendants knew that DailyKos and Kos Media were relying upon Defendants' skill and judgment to provide that data.

46.   Plaintiffs justifiably relied upon skill and judgment of Defendants in supplying polling data.

47. Defendants breached the warranty of workmanlike performance and failed to provide accurate polling data, thus proximately causing Plaintiffs to incur losses, damages, and liabilities.

48. At all pertinent times, Defendants owed certain non-delegable duties to Plaintiffs regarding the performing of political polling, and have subjected Plaintiffs to liability without any fault or wrong doing on their part.

49. The willful and negligent acts and omissions of Research 2000 and Ali were part of and were done in furtherance of its business, in violation of the duties owed by Research 2000 and Ali to Kos Media among others. Therefore Research 2000 should be held liable for these breaches of the warranty, and should be ordered to pay all damages which Plaintiffs have incurred and will incur as a result of and/or in defense of this action, or settlement of claims, plus attorneys' fees, expenses and interest.

## FOURTH CAUSE OF ACTION

### Fraud - Intentional Misrepresentation

50. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 49, as though fully set forth at length herein.

51. Defendants, and each of them, falsely represented to Plaintiffs that they were able to and would provide accurate and detailed polling results for specific electoral contests. Defendants' misrepresentations include the following:

    a) Shortly after the 2008 election, Plaintiffs entered into negotiations with Research 2000 by and through Defendant Ali for a long term, multi-poll deal that included a weekly "State of the Nation" poll and state/race specific polls as requested. Defendants Ali and Research 2000 promised to provide polling data in return for two lump-sum payments from DailyKos as well as an additional large payment in December 2008 at the initiation of the agreement

| | | |
|---|---|---|
| 1 | b) | The parties specifically agreed that the weekly "State of the |
| 2 | | Nation" poll was to include 2,400 respondents. This remained in |
| 3 | | effect until March 4, 2010, when the parties agreed to poll 1,200 |
| 4 | | respondents weekly; |
| 5 | c) | The material misstatements by Research 2000 included statements |
| 6 | | made on their web site. For example, upon information and belief, |
| 7 | | on Dec. 11th 2002, Defendant Ali posted the following |
| 8 | | misstatement on his website located at |
| 9 | | http://www.research2000.us/category/services/ : "All of our |
| 10 | | surveys are conducted by telephone. We will design a |
| 11 | | questionnaire in consultation with our client. The telephone |
| 12 | | interviewing is conducted and supervised by a professional staff |
| 13 | | and results are coded and processed into a statistical format. Our |
| 14 | | poll reports include methodology, overall results, selected |
| 15 | | crosstabulations, as well as written analysis and |
| 16 | | recommendations." As of the date of filing this Complaint, this |
| 17 | | material misstatement continued to be displayed as part of |
| 18 | | Defendants' website. The statement is false because in reality |
| 19 | | Defendants were falsifying their poll results in whole or in part. |
| 20 | d) | Other misstatements published on a website maintained by |
| 21 | | Defendants at http://www.research2000.us/about-2/ include the |
| 22 | | following: "Research 2000 had the most accurate "final" state and |
| 23 | | congressional polls in the nation in the 2005, 2004, 202 and 200 |
| 24 | | elections . . . ." The statement is misleading because it creates the |
| 25 | | false impression that Defendants' current polls are accurate when, |
| 26 | | in fact, they are fabricated in whole or in part. Moreover, the |
| 27 | | website contains a material omission in that Defendants' recent |
| 28 | | polls are not at all accurate, and are actually fabricated in whole or |

...

in part. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, remain published on a website maintained by defendants.

e) Other misstatements published on a website maintained by Defendants at http://www.research2000.us/about-2/ include the following: "What separates us from other firms is that we 'LISTEN' to our clients. By listening, and consulting with our clients we develop and design the most effective research strategy that will accurately define and measure what our clients need to know...." This statement is false because in reality Defendants do not accurately define or measure what their clients need to know. In reality, Defendants fabricate the polling data in whole or in part and supply false results and phony data to their clients. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, and remain published on a website maintained by defendants.

f) The parties specifically agreed that polling as to specific electoral contests was to include 600 respondents, with primary oversamples of 400 respondents.

g) By the request of Ali, claiming it would provide "immense" help for cash flow reasons, DailyKos agreed to advance its second lump-sum payment to May 2009 in exchange for additional polls to be performed free of charge.

h) In December 2009, Ali and Research 2000 again promised under a new agreement for 2010 that they would deliver polling results,

11
COMPLAINT

in part. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, remain published on a website maintained by defendants.

e) Other misstatements published on a website maintained by Defendants at http://www.research2000.us/about-2/ include the following: "What separates us from other firms is that we 'LISTEN' to our clients. By listening, and consulting with our clients we develop and design the most effective research strategy that will accurately define and measure what our clients need to know...." This statement is false because in reality Defendants do not accurately define or measure what their clients need to know. In reality, Defendants fabricate the polling data in whole or in part and supply false results and phony data to their clients. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, and remain published on a website maintained by defendants.

f) The parties specifically agreed that polling as to specific electoral contests was to include 600 respondents, with primary oversamples of 400 respondents.

g) By the request of Ali, claiming it would provide "immense" help for cash flow reasons, DailyKos agreed to advance its second lump-sum payment to May 2009 in exchange for additional polls to be performed free of charge.

h) In December 2009, Ali and Research 2000 again promised under a new agreement for 2010 that they would deliver polling results,

increasing the cost per poll performed and continuing the weekly "State of the Nation" poll.

i) A further example of the false statements made to Plaintiffs by Defendant Ali is provided by a statement made on Friday November 14 2008 at 6:38 A.M. Defendant Ali made the following claim in an email sent to Plaintiffs: "Here is the scoop on margin of error. It would take 2400 likely voters to reduce the margin of error to 2% for likely voters. Of course it only takes 1100 among adults to have a margin for error of 3%. So, the question is, are you etched in stone on having a likely voter sample of 2% margin or not? Our costs are based on the number of calls we have to make and complete. I think we should do a sample of 2200, 1100 adult and 1100 likely voters and the margin for both would be 3%." This statement is false and misleading because Defendant Ali fails to disclose that for many of the poll results supplied to Plaintiffs, the phone calls could not have been made as contracted, or the results were altered or fabricated in whole or in part. As such, the costs were not based on the number of calls that Defendants had to make and complete.

52. Plaintiffs reasonably relied on these results based on assurances by Ali and Research 2000 and also because these polls were often praised for their "transparency," since they included what purported to be detailed cross-tabs on sub-populations and a clear and accurate description of the random dialing technique Research 2000 employed.

53. Ali and Research 2000 knew the representations they made during the course of negotiations described above were false because, upon information and belief, Ali and Research 2000 had knowingly supplied falsified polling data on a systemic basis. Accordingly, it is evident that Ali and Research 2000 never intended

to fulfill their promise to provide accurate polling data and instead intended that Plaintiffs rely upon their deliberate misrepresentations to the contrary.

54. DailyKos' reliance on the representations of Ali and Research 2000 caused Plaintiffs harm in the form of damage to their reputation, and also in the form of damages.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation

55. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 54, as though fully set forth at length herein.

56. Defendants falsely represented to Plaintiffs that they were able to and would provide accurate and detailed polling results for specific electoral contests. Those representations included the following:

  a) Shortly after the 2008 election, Plaintiffs entered into negotiations with Research 2000 by and through Defendant Ali for a long term, multi-poll deal that included a weekly "State of the Nation" poll and state/race specific polls as requested. Defendants Ali and Research 2000 promised to provide polling data in return for two lump-sum payments from DailyKos as well as an additional large payment in December 2008 at the initiation of the agreement

  b) The parties specifically agreed that the weekly "State of the Nation" poll was to include 2,400 respondents. This agreement remained in effect until March 4, 2010, when the parties agreed to poll 1,200 respondents weekly.

  c) The material misstatements by Research 2000 included statements made on their web site. For example, upon information and belief, on Dec. 11th 2002, Defendant Ali posted the following misstatement on his website located at

|  |  |
|---|---|
| 1 | http://www.research2000.us/category/services/ : "All of our |
| 2 | surveys are conducted by telephone. We will design a |
| 3 | questionnaire in consultation with our client. The telephone |
| 4 | interviewing is conducted and supervised by a professional staff |
| 5 | and results are coded and processed into a statistical format. Our |
| 6 | poll reports include methodology, overall results, selected |
| 7 | crosstabulations, as well as written analysis and |
| 8 | recommendations." As of the date of filing this Complaint this |
| 9 | material misstatement continued to be displayed as part of |
| 10 | Defendants' website. The statement is false because, in reality, |
| 11 | Defendants were falsifying their poll results in whole or in part. |

d) Other misstatements published on a website maintained by Defendants at http://www.research2000.us/about-2/ include the following: "Research 2000 had the most accurate "final" state and congressional polls in the nation in the 2005, 2004, 2002 and 2000 elections . . . ." The statement is misleading because it creates the false impression that Defendants' current polls are accurate when, in fact, they are fabricated in whole or in part. Moreover, the website contains a material omission in that Defendants' recent polls are not at all accurate, and are actually fabricated in whole or in part. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, remain published on a website maintained by defendants.

e) Other misstatements published on a website maintained by Defendants at http://www.research2000.us/about-2/ include the following: "What separates us from other firms is that we "LISTEN" to our clients. By listening, and consulting with our

clients we develop and design the most effective research strategy that will accurately define and measure what our clients need to know . . . ." This statement is false because in reality Defendants do not accurately define or measure what their clients need to know. In reality, Defendants fabricate the polling data in whole or in part and supply unreliable data and phony results to their clients. Upon information and belief these material misstatements and omissions were published over the past two years and as of the date of filing this Complaint, remain published on a website maintained by defendants..

f) The parties specifically agreed that polling as to specific electoral contests was to include 600 respondents, with primary oversamples of 400 respondents.

g) By the request of Ali, claiming it would provide "immense" help for cash flow reasons, DailyKos agreed to advance its second lump-sum payment to May 2009 in exchange for additional polls to be performed free of charge.

h) In December 2009, Ali and Research 2000 again promised under a new agreement for 2010 that they would deliver polling results, increasing the cost per poll performed and continuing the weekly "State of the Nation" poll.

i) A further example of the false statements made to Plaintiffs by Defendant Ali is provided by a statement made on Friday November 14 2008 at 6:38 A.M. Defendant Ali made the following claim in an email sent to Plaintiffs: "Here is the scoop on margin of error. It would take 2400 likely voters to reduce the margin of error to 2% for likely voters. Of course it only takes 1100 among adults to have a margin for error of 3%. So, the

question is, are you etched in stone on having a likely voter sample of 2% margin or not? Our costs are based on the number of calls we have to make and complete. I think we should do a sample of 2200, 1100 adult and 1100 likely voters and the margin for both would be 3%." This statement is false and misleading because Defendant Ali fails to disclose that for many of the poll results supplied to Plaintiffs, the phone calls could not have been made as contracted, or the results were altered in whole or in part. As such, the costs were not based on the number of calls that Defendants had to make and complete.

57. Plaintiffs reasonably relied on these results based on assurances by Ali and Research 2000 and also because these polls were often praised for their "transparency," since they included detailed cross-tabs on sub-populations and a clear description of the random dialing technique Research 2000 employed.

58. Ali and Research 2000 had no reasonable grounds to believe the promises they made during the course of negotiations described above as to the accuracy and reliability of the poll data that they promised to provide. Upon information and belief, Ali and Research 2000 supplied falsified polling data on a systemic basis. Accordingly, Ali and Research 2000 had no reasonable grounds to believe any representation made on their part as to the reliability and accuracy of the poll data that they promised to provide Plaintiffs.

59. Plaintiffs' reliance misleading representations made by Ali and Research 2000 caused Plaintiffs harm in the form of damage to Plaintiffs' reputation, and also in the form of damages.

//
//
//
//

## SIXTH CAUSE OF ACTION

### Constructive Fraud

60. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 59, as though fully set forth at length herein.

61. A confidential relationship existed between the parties because, by virtue of Defendants' promise to provide detailed and accurate polling results, they gained the confidence of Plaintiffs and held themselves out as acting in Plaintiffs and DailyKos' best interest. Plaintiffs placed utmost confidence in Ali and Research 2000, and justifiably relied upon their representations that Defendants would provide detailed and accurate polling data. As such, the parties were in an unequal relationship as DailyKos relied upon Defendants to supply accurate data, and had no reasonable method of regularly and independently checking the accuracy of that data. DailyKos' reliance was reasonable because *inter alia* Defendants' polls were often praised for their "transparency," since they included detailed cross-tabs on sub-populations and a clear description of the random dialing technique Research 2000 employed.

62. By virtue of this relationship, Defendants Ali and Research 2000 owed Plaintiffs a duty to act in Plaintiffs' best interest by providing truly accurate and reliable polling data. Defendants breached this duty by providing falsified polling results.

63. As a direct proximate result of Defendants' conduct described above, Plaintiffs lost net revenue, and suffered irreparable reputational harm. Such losses were foreseeable at the time Defendants decided to provide false polling results as Defendants knew that Plaintiffs would publish the same data, make projections and write articles based upon the same information.

//
//
//

17
COMPLAINT

## SEVENTH CAUSE OF ACTION

### Conversion

64. Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 63, as though fully set forth at length herein.

65. Defendants, and each of them, wrongfully exercised control over the Plaintiffs' personal property in the form of monetary payments made to Defendants in return for services to be rendered and goods to be delivered.

66. Defendants Ali and Research 2000 intentionally took possession of Plaintiffs' property in the form of money paid to Defendants for polling results and data. Defendants have in their possession now, and have possessed money received from Plaintiffs continuously since at least December 2008

67. Defendants Ali and Research 2000 obtained possession of Plaintiffs' property by fraud as described and set forth more fully herein in paragraphs 1 through 66. As such, Plaintiffs did not consent to Defendants' possession, use, or control of their money as Defendants obtained that money by fraud.

68. Defendants' conduct in promising to provide accurate polling results and then fraudulently manufacturing phony results in lieu of same directly caused Plaintiffs to expend significant sums of money for polling results that Plaintiffs never received.

### PRAYER FOR RELIEF

69. Wherefore, Plaintiffs request that judgment be entered in their favor and against each Defendant as follows:

    a) Jointly and severally against each Defendant for damages suffered by Plaintiffs as a result of such breaches, and fraudulent conduct in an amount to be established at trial and including, but not limited to, lost profits according to proof;

b) Severally against each Defendant, restitution for an amount equaling the amount of unjust enrichment received by Defendants as a result of such breaches, fraudulent conduct and unfair business practices;

c) Injunctive Relief;

d) Exemplary damages;

e) Costs and attorneys' fees according to proof;

f) Such other equitable or monetary relief as the Court deems appropriate

g) Plaintiff hereby demands a jury trial.

DATED: June 29, 2010        COZEN O'CONNOR

By: _____
NATHAN DOOLEY
ADAM C. BONIN
777 South Figueroa Street
Suite 2850
Los Angeles, California 90017
Telephone: 213.892.7900
Toll Free Phone: 800.563.1027
Facsimile: 213.892.7999

Attorneys for Plaintiffs
Kos Media and Markos Moulitsas Zúniga